E-FILED
Monday, 28 June, 2021  03:15:34 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| BRANDI CAMPBELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KEAGLE, INC., d/b/a THE SILVER BULLET BAR, and EDWARD SALFELDER, JR.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 20-CV-2271<br>)<br>)<br>)<br>)<br>) |

## O R D E R

This case is before the court on Defendants' Motion to Compel Arbitration (#10), filed November 23, 2020, to which Plaintiff filed an Opposition (#11) in response on December 7, 2020.  Defendants filed a Reply (#16) on June 10, 2021, after receiving leave of court during a status conference.

For the following reasons, the Motion to Compel Arbitration (#10) is DENIED.

### I.  BACKGROUND

Plaintiff, Brandi Campbell, filed the instant suit on September 29, 2020, on behalf of herself and all others similarly situated, against Defendant Keagle, Inc., doing business as The Silver Bullet Bar, and owner-manager Defendant Edward Salfelder, Jr. ("Defendants") for violations of the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), and Illinois Wage Payment and Collection Act ("IWPCA").

1

Plaintiff signed an entertainment lease ("Agreement") with Defendants on January 21, 2020, by which Plaintiff agreed to entertain at The Silver Bullet Bar. The Agreement contains twelve paragraphs.[1] Defendants filed the instant Motion to Compel Arbitration pursuant to the Agreement's paragraph 8 ("arbitration clause"), which reads in full:

> Any controversy, dispute or claim arising out of this lease or otherwise from me entertaining at the premises of this club shall be exclusively decided by binding arbitration under the Federal Arbitration Act. The owners of the Silver Bullet Bar reserve the right to choose the arbitrator and location of any such proceedings. I agree that all claims between me and the Silver Bullet Bar, its owners, or management will not be litigated individually and that I will not consolidate or file a class suit for any claim against the Silver Bullet Bar, its owners, or management. I will pay the cost of my arbitration and legal costs, regardless of the outcome of any such action.

Plaintiff performed as an entertainer pursuant to the Agreement with Defendants during the months of January through March 2020. There is no dispute that Plaintiff's claims in the instant suit arise out of that time period.

In response to Defendants' Motion to Compel Arbitration, Plaintiff argues that the arbitration clause is unconscionable and therefore unenforceable. No other provisions of the Agreement are currently in dispute.

---

[1] The Agreement's paragraphs are numbered 1 through 11; however, there are two consecutive paragraphs each numbered 7.

## II.  ANALYSIS

A.  <u>The Federal Arbitration Act</u>

"The Federal Arbitration Act ('FAA') was originally enacted 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'"  *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011), quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  "In furtherance of this goal, the FAA 'provides … for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4.'"  *Kawasaki*, 660 F.3d at 994, quoting *Gilmer*, 500 U.S. at 25; 9 U.S.C. § 4.

Section 2 of the FAA reflects this "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  However, § 2 also "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'"  *AT&T Mobility*, 563 U.S. at 339, quoting 9 U.S.C. § 2.  This so-called "savings clause" contained in § 2 therefore "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability[.]"  *AT&T Mobility*, 563 U.S. at 339 (internal quotations omitted).

Federal courts must apply state contract law to determine whether arbitration agreements are valid and enforceable under § 2.  See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

3

B. <u>Illinois Contract Law</u>

Here, Plaintiff is a resident of Illinois, Defendants are an Illinois corporation and Illinois resident, the Agreement was signed in Illinois, and Plaintiff performed services in Illinois pursuant to the Agreement.  The Agreement does not contain a choice-of-law provision.  Therefore, Illinois contract law determines whether the arbitration clause is enforceable.

Under Illinois law, a contract may be held unenforceable due to either procedural or substantive unconscionability, or a combination of both.  See *Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (Ill. 2006).  In the instant matter, Plaintiff argues only that the arbitration clause is substantively unconscionable.

A contract is substantively unconscionable when its terms are "inordinately one-sided in one party's favor."  *Razor*, 854 N.E.2d at 622.  When considering whether an agreement is substantively unconscionable under Illinois law, courts consider whether the "contract terms [are] so one-sided as to oppress or unfairly surprise an innocent party" and whether there is "an overall imbalance in the obligations and rights imposed by the bargain."  *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. 2006).

C. <u>Whether the Agreement is Unconscionable Under Illinois Law</u>

Here, Plaintiff argues that the terms of the arbitration clause are unconscionable in multiple respects.  First, Defendants have sole authority to choose the arbitrator.  Second, Defendants have sole authority to choose the location of arbitration.  Third, the Agreement does not specify the rules governing the arbitration proceedings.  And finally, according to the terms of the Agreement, Plaintiff will be responsible for

4

attorneys' fees and the cost of arbitration regardless of the outcome, even though the relevant statutes (FLSA, IMWL, and IWPCA) provide prevailing plaintiffs with the right to recover attorneys' fees and costs.

First, a "strong possibility of arbitrator bias" may give rise to a finding of substantive unconscionability under Illinois law, particularly when combined with other one-sided terms. *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 779 (7th Cir. 2014). In their Reply in support of the instant motion, Defendants acknowledge that courts within the Seventh Circuit have found arbitration agreements unconscionable when one party has sole discretion to select the arbitrator.

Here, the terms of the arbitration clause strongly suggest that any arbitrator will be "chosen in a manner to ensure partiality" because, according to paragraph 8: "[t]he owners of the Silver Bullet Bar [Defendants] reserve the right to choose the arbitrator[.]" See *Jackson*, 764 F.3d at 779; see also *Newton v. American Debt Services, Inc.*, 549 Fed. Appx. 692, 694 (9th Cir. Dec. 12, 2013) (finding the defendants' right to select arbitrator was one of four terms rendering arbitration agreement substantively unconscionable); *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (considering an expert's finding that the "most serious flaw" of an arbitration agreement was that the defendant-employer unilaterally determined the list of potential arbitrators, thereby "violat[ing] the most fundamental aspect of justice, namely an impartial decision maker.").

Second, with respect to Defendants' control over the location of arbitration proceedings under the terms of the arbitration clause, Defendants note that the clause is

governed by the FAA, under which § 4 provides that arbitration "shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Defendants argue that because Plaintiff filed her case in the Central District of Illinois and their motion to compel arbitration is pending in this district, arbitration would also necessarily occur in this district, which is neither burdensome for Plaintiff nor unconscionably favorable to Defendants.

However, there is a distinction between the FAA provision now cited by Defendants and the plain language of paragraph 8, under which Defendants, "[t]he owners of the Silver Bullet Bar[,] reserve the right to choose the … location of any such [arbitration] proceedings." According to the arbitration clause, as written, Defendants are not bound to select an arbitration location within the Central District of Illinois. Section 4 of the FAA places no limitations on the *parties* as it relates to location. Rather, § 4 merely limits the court now in its ability to issue an order pursuant to § 4, in that the court may only compel arbitration within its own district. See *Zhan v. Hogan*, 2018 WL 9877970, at *3 (C.D. Ill. Dec. 18, 2018). Had Plaintiff pursued her claim via the arbitration clause in her Agreement with Defendants, without first filing suit in this district, Defendants could have chosen any location, without limitation, according to the plain language of the Agreement.

As written, the arbitration clause is plainly one-sided insofar as Defendants have reserved the sole right to determine the location of arbitration proceedings. Nevertheless, this term – standing alone – may not be sufficient to render the arbitration agreement *inordinately* one-sided and therefore unconscionable under Illinois law.

However, when considered in combination with the arbitration clause's other terms, Defendants' sole right to choose the location of arbitration may be relevant both to the possibility of arbitrator bias in favor of Defendants (as already discussed), and to the possibility that arbitration would be sufficiently costly such that Plaintiff could be effectively prohibited from vindicating her statutory rights (discussed below).

Third, the parties' arbitration clause provides no rules by which arbitration proceedings will be conducted. The Seventh Circuit has held that an arbitration clause that is general in its terms and lacks detail as to the identity of the arbitrator or the rules of arbitration, but that clearly evinces the parties' intention to arbitrate, is still enforceable. *Green v. U.S. CashAdvance Illinois, LLC*, 724 F.3d 787, 792-93 (7th Cir. 2013). However, the Seventh Circuit has also held that an arbitration agreement is substantively unconscionable when it allows one of the two parties "to manipulate what purported to be a fair arbitration process by selecting an arbitrator and proceeding according to nonexistent rules." *Jackson*, 764 F.3d at 780-81 (discussing how the case is "distinctly different from the situation [the court] faced in *Green*").

The facts of the instant case fall somewhere between *Green*, with its detail-free arbitration clause devoid not only of delineated rules but also of any indicators of bias or manipulation, and *Jackson*, in which the arbitration clause would have created "a process that is a sham from stem to stern." *Jackson*, 764 F.3d at 779. Here, the arbitration clause is not devoid of any terms whatsoever, as in *Green*. Rather, as already discussed, Defendants reserve the right to choose both the arbitrator and the location of arbitration. Unlike *Jackson*, however, the instant agreement is not a "sham" in that it

7

does not purport to establish a neutral arbitrator and neutral set of rules with the obvious intention of deceiving Plaintiff.  See *Jackson*, 764 F.3d at 781 (indicating that the arbitration clause was "designed to lull the [plaintiff] into believing that … [arbitration proceedings] would be under the aegis of a public body and conducted under procedural rules approved by that body" when, in reality, the group named in the agreement had not ever undertaken arbitrations and had no rules in place for arbitration proceedings).

Still, the court notes that, in the absence of any agreed upon rules, the arbitration clause as written suggests a strong possibility that Defendants would ultimately dictate the rules for arbitration through their exclusive right to choose the arbitrator.  See *Drinane v. State Farm Mut. Auto. Ins. Co.*, 606 N.E.2d 1181, 1183-84 (Ill. 1992) (indicating that "it is essential that the process by which the arbitrator is selected be certain as to the impartiality of the arbitrator" because, in the absence of previously agreed upon rules, arbitrators themselves set the rules of arbitration proceedings with very few limitations), citing *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149 (1968).  Therefore, on balance, the court finds that the instant clause is more analogous to the unconscionable agreement in *Jackson* than to the enforceable agreement in *Green*.

Finally, according to the terms of the Agreement's arbitration clause, Plaintiff is required to pay the cost of arbitration and associated legal costs, regardless of the outcome of arbitration.  By contrast, the statutes under which Plaintiff brings the instant suit – the FLSA, IMWL, and IWPCA – contain fee-shifting provisions, by which she

8

would recover attorneys' fees and costs if she prevailed.  29 U.S.C. § 216(b); 820 Ill.

Comp. Stat. 105/12(a); 820 Ill. Comp. Stat. 115/14(a).  These statutory fee-shifting

provisions are widely held to be integral to the vindication of rights thereunder.  See,

e.g., *Sanchez v. Nitro Lift Technologies, L.L.C.*, 91 F.Supp.3d 1218, 1222 (E.D. Okl. 2015)

(indicating that a reversal of the cost- and fee-shifting provision of FLSA "would deter a

substantial number of similarly situated potential litigants, as they would fear being

stuck with substantial costs and fees in the event they did not prevail in their claim"),

citing *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 740 (1981); *Falica v.

Advance Tenant Services, Inc.*, 384 F.Supp.2d 75, 77 (D.C.D.C. 2005) (holding that an

award of attorneys' fees in FLSA cases is mandatory and unconditional because the

statutory language, 29 U.S.C. § 216(b), provides that a court "shall, in addition to any

judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be

paid by the defendant, and costs of the action.").

The Seventh Circuit, applying Illinois law, has held arbitration clauses that

prohibit the award of attorneys' fees when recovery of those fees is otherwise provided

by statute to be unconscionable and unenforceable.  See *McCaskill v. SCI Management

Corp.*, 298 F.3d 677, 680 (7th Cir. 2002); see also *Midgett v. Sackett-Chicago, Inc.*, 473

N.E.2d 1280, 1284 (Ill. 1984) (finding an arbitration agreement unenforceable when it

precluded plaintiff-employee from recovering the full range of remedies available by

statute).

Having therefore considered each of the terms to which Plaintiff objects, and mindful of the FAA's liberal policy in favor of arbitration, the court concludes that the instant arbitration agreement is unconscionable as written. Specifically, both Illinois and Seventh Circuit caselaw support a finding of unconscionability when a party unilaterally controls the choice of arbitrator, the arbitration agreement prohibits statutory remedies otherwise integral to a vindication of rights, or both. This is particularly true when those terms are combined with other terms suggestive of bias or one-sidedness. Here, Defendants' exclusive control over the location of arbitration and the arbitration clause's silence as to rules that may otherwise be determined by Defendants' choice of arbitrator are additional terms leading the court to conclude that the arbitration clause is inordinately one-sided in Defendants' favor and therefore unconscionable under Illinois law.

D. Whether the Court Should Sever and Substitute Unconscionable Provisions

In their Reply, Defendants argue that even if the court finds unconscionable any terms in the Agreement's arbitration clause, it should sever those provisions and substitute them with enforceable terms pursuant to § 5 of the FAA:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]

9 U.S.C. § 5.

In *Green v. U.S. CashAdvance Illinois*, the Seventh Circuit specifically distinguished between the striking of an arbitration agreement as wholly unenforceable under § 2 and the court's use of § 5 to name an arbitrator. See 724 F.3d at 791-92. The Seventh Circuit discussed the two sections as alternatives, rather than as complements to be invoked in tandem. See *Green*, 724 F.3d at 791 (indicating that different standards apply to § 2 versus § 5 because a district court could consider whether unconscionable or otherwise unenforceable provisions were "integral" to the arbitration agreement such that it would be wholly unenforceable under § 2, but that a district court could not consider whether the arbitrator originally designated by the parties was "integral" to their agreement when considering appointing a new arbitrator if there was a "lapse" under § 5).

Here, the issue is whether the court's striking of the arbitration clause as unconscionable under Illinois law constitutes a "lapse in the naming of an arbitrator" under § 5. Given the Seventh Circuit's distinction between § 2 and § 5 of the FAA, an unconscionable provision is not equivalent to a lapse in the naming of an arbitrator. See also *Newton v. American Debt Services, Inc.*, 2012 WL 3155719, at *6 (N.D. Cal. Aug. 2, 2012) ("The Court was not able to find a case holding that a court's striking of an arbitrator selection clause constitutes a 'lapse in the naming of an arbitrator…, or in the filling of a vacancy' under 9 U.S.C. § 5") (internal citations omitted); *Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582, 625 (D.S.C. 1998) ("The precedent deals with cases in which there was an unavailability of a specific arbitrator, or one party refused to select an arbitrator based on a previously agreed upon plan. Thus, this court's authority to

invoke § 5 upon striking the … arbitrator selection provision is not clearly

established."), affirmed and remanded 173 F.3d 933 (4th Cir. 1999); *In re Salomon Inc.*

*Shareholders' Derivative Litigation*, 68 F.3d 554, 560 (2d Cir. 1995) ("[T]he lapse referred to

in § 5 means a lapse in time in the naming of the arbitrator or in the filling of a vacancy

on a panel of arbitrators … or some other mechanical breakdown in the arbitrator

selection process[.]" (internal quotations omitted)).

Therefore, this court will not sever the unconscionable provisions of the

Agreement and substitute its own choice of arbitrator or any other provisions pursuant

to § 5 of the FAA.  Rather, the court views the "totality of the unconscionable

provisions," as discussed in the preceding section, to be "essential to the arbitration

provision such that, absent those provisions, the arbitration provision is meaningless."

*Potiyevskiy v. TM Transportation*, *Inc.*, 2013 IL App (1st) 131864-U (Nov. 25, 2013), 2013

WL 6199949, at *9 (Ill. App. Ct. 2013); see also *Abbott-Interfast Corp. v. Harkabus*, 619

N.E.2d 1337, 1344 (Ill. App. Ct. 1993) ("The fairness of the Agreement as originally

written is also relevant to whether the trial court should modify the Agreement or sever

the unenforceable provisions"); *Booker v. Robert Half International, Inc.*, 413 F.3d 77, 84-85

(D.C. Cir. 2005) ("If illegality pervades the arbitration agreement such that only a

disintegrated fragment would remain after hacking away the unenforceable parts, …

the judicial effort begins to look more like rewriting the contract than fulfilling the

intent of the parties….  [T]he more the employer overreaches, the less likely a court will

be to sever the provisions and enforce the clause[.]").

IT IS THEREFORE ORDERED:

(1)     The Motion to Compel Arbitration (#10) is DENIED.

(2)     This matter is referred to the Magistrate Judge for further proceedings

consistent with this order.

ENTERED this 28th day of June, 2021.

<u>s/Colin Stirling Bruce</u>
COLIN S. BRUCE
U.S. DISTRICT JUDGE