E-FILED
Wednesday, 04 May, 2022  05:20:48 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT 1

No. 21-2256

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

BRANDI CAMPBELL,

    *Plaintiff-Appellee*,

v.

KEAGLE INC., doing business as
SILVER BULLET BAR, and
EDWARD SALFELDER, JR.,

    *Defendants-Appellants*.

Appeal from the United States District
Court for the Central District of
Illinois, Urbana Division,

No. 20-CV-02271

The Honorable Colin S. Bruce,
Judge Presiding.

**PETITION FOR RE-HEARING EN BANC**

Bradley Manewith
Siegel & Dolan Ltd.
150 North Wacker Drive, Suite 3000
Chicago, IL 60606
Tel. (312) 878-3210
bmanewith@msiegellaw.com

Shannon Liss-Riordan
Adelaide Pagano
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. (617) 994-5800
sliss@llrlaw.com
apagano@llrlaw.com

*Counsel for Plaintiff-Appellee Brandi Campbell*

# DISCLOSURE STATEMENT

Save As    Clear Form

Case: 21-2256     Document: 6       Filed: 07/20/2021     Pages: 2
APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2256

Short Caption: Campbell v. Keagle Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Brandi Campbell

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Lichten & Liss-Riordan, P.C. and Siegel & Dolan, Ltd. for Plaintiff-Appellee

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and
N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: s/ Adelaide Pagano          Date: July 20, 2021

Attorney's Printed Name: Adelaide Pagano

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☐

Address: 729 Boylston Street, Suite 2000
Boston, MA 02116

Phone Number: 617-994-5800          Fax Number: 617-994-5801

E-Mail Address: apagano@llrlaw.com

rev. 12/19 AK

i

Save As    Clear Form

Case: 21-2256    Document: 7    Filed: 07/20/2021    Pages: 2
**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2256

Short Caption: Campbell v. Keagle Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Brandi Campbell

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Lichten & Liss-Riordan, P.C. and Siegel & Dolan, Ltd. for Plaintiff-Appellee

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Shannon Liss-Riordan    Date: July 14, 2021

Attorney's Printed Name: Shannon Liss-Riordan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☐

Address: 729 Boylston Street, Suite 2000

Boston, MA 02116

Phone Number: 617-994-5800    Fax Number: 617-994-5801

E-Mail Address: sliss@llrlaw.com

rev. 12/19 AK

ii

Save As        Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2256

Short Caption: Brandi Campbell v. Keagle Inc, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Brandi Campbell

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Siegel & Dolan Ltd.

Lichten & Liss-Riordan, P.C.

(3)     If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

            n/a

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            n/a

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: /s/ Bradley Manewith                          Date: 7/21/2021

Attorney's Printed Name:  Bradley Manewith

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  150 N Wacker Dr, Ste 3000

         Chicago, IL 60606

Phone Number: (312) 878-3210                          Fax Number: (312) 878-3211

E-Mail Address: bmanewith@msiegellaw.com

rev. 12/19 AK

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................... i

TABLE OF AUTHORITIES .................................................................v

RULE 35(b) STATEMENT.................................................................1

BACKGROUND ..................................................................................6

ARGUMENT ......................................................................................9

　1.　The Panel's Decision To Order Arbitration And Appoint An
　　　Arbitrator Under An Unconscionable Agreement Warrants *En
　　　Banc* Review........................................................................9

　　　A.　The Panel's Decision Conflicts With This Circuit's
　　　　　Precedent In *Jackson v. Payday Financial, LLC* .......................9

　　　B.　The Panel's Decision Presents Questions of Exceptional
　　　　　Importance Regarding The Relationship Between Section
　　　　　2 and Section 5 of the FAA......................................................13

CONCLUSION....................................................................................16

CERTIFICATE OF COMPLIANCE........................................................17

CERTIFICATE OF SERVICE ..............................................................18

# TABLE OF AUTHORITIES

## Cases

*Abbott-Interfast Corp. v. Harkabus*
   250 Ill. App. 3d 13, 619 N.E.2d 1337 (1993) ....................................................5, 15

*AT&T Mobility LLC v. Concepcion*
   563 U.S. 333 (2011) ...........................................................................................13

*Booker v. Robert Half Int'l, Inc.*
   413 F.3d 77 (D.C. Cir. 2005) .................................................................................4

*Campbell v. Keagle Inc.*
   2022 WL 633305 (7th Cir. March 4, 2022) .........................................................1

*Campbell v. Keagle, Inc.*
   No. 20-CV-2271, 2021 WL 6102930 (C.D. Ill. June 28, 2021) ................ 1, 7, 12

*Chavarria v. Ralphs Grocery Co.*
   733 F.3d 916 (9th Cir. 2013).............................................................................4, 7

*Clincy v. Galardi South Enterprises, Inc.*
   808 F. Supp. 2d 1326 (N.D. Ga. 2011) .................................................................6

*Degidio v. Crazy Horse Saloon and Restaurant, Inc.*
   Civ. No. 4:13-cv-02136-BHH, 2015 WL 5834280 (D.S.C. Sept. 30, 2015).........6

*Epic Sys. Corp. v. Lewis*
   138 S. Ct. 1612 (2018) .......................................................................................13

*Ferguson v. Countrywide Credit Indus., Inc.*
   298 F.3d 778 (9th Cir. 2002).............................................................................4, 15

*First Peek Ultrasound L.L.C. v. Weideman*
   2018 IL App (1st) 18-0858-U, 2018 WL 6438309 (Ill. App. Ct. 2018)..........5, 15

Green v. U.S. Cash Advance, LLC
   724 F.3d 787 (7th Cir. 2013).............................................................................2, 9

*Harrell v. Diamond A Entm't, Inc.*
   992 F. Supp. 1343 (M.D. Fla. 1997) .....................................................................6

*Hart v. Rick's Cabaret Int'l, Inc.*
   967 F. Supp. 2d 901 (S.D.N.Y. 2013) ......................................................................6

*Hooters of Am., Inc. v. Phillips*
   173 F.3d 933 (4th Cir. 1999) ...................................................................................3

*Jackson v. Payday Fin., LLC*
   764 F.3d 765 (7th Cir. 2014) ........................................................................... passim

*Kristian v. Comcast Corp.*
   446 F.3d 25 (1st Cir. 2006) ...............................................................................4, 15

*Lim v. TForce Logistics, LLC*
   8 F.4th 992 (9th Cir. 2021) ...............................................................................4, 15

*Martinell v. Navistar Int'l Corp.*
   2012 WL 2503964 (N.D. Ill. June 28, 2012) .......................................................12

*McFeeley v. Jackson Street Entertainment, LLC*
   825 F.3d 235 (4th Cir. 2016) ...................................................................................6

*Morrison v. Cir. City Stores, Inc.*
   317 F.3d 646 (6th Cir. 2003) ...................................................................................3

*Morse v. Mer Corp*
   No. 1:08-cv-WTL-JMS, 2010 WL 2346334 (S.D. Ind. June 4, 2010) .................6

*Newton v. American Debt Services, Inc.*
   2012 WL 3155719 (N.D. Cal. Aug. 2, 2012) ......................................................11

*Nino v. Jewelry Exchange*
   609 F.3d 191 (3d Cir. 2010) .............................................................................4, 15

*Potiyevskiy v. TM Transp., Inc.*
   2013 WL 6199949 (Ill. App. Ct. Nov. 25, 2013) .................................................15

*Reich v. Circle C. Invs., Inc.*
   998 F.2d 324 (5th Cir. 1993) ...................................................................................6

*Shaw v. Set Enterprises, Inc.*
   241 F. Supp. 3d 1318 (S.D. Fla. 2017) ...................................................................6

*Thompson v. Linda And A, Inc.*
  779 F. Supp. 2d 139 (D.D.C. 2011) .......................................................6

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*
  489 U.S. 468 (1989) .................................................................13

*Zaborowski v. MHN Gov't Servs., Inc.*
  601 F. App'x 461 (9th Cir. 2014) .........................................................4

Zubi v. Acceptance Indem. Ins. Co.
  323 Ill.App.3d 28 (2001) .......................................................12

**Statutes**

9 U.S.C. § 2 ............................................................................1, 13

9 U.S.C. § 5 ........................................................................ passim

**Rules**

Fed. R. App. P. 35 .................................................................5, 13

## RULE 35(b) STATEMENT

Plaintiff-Appellee respectfully requests rehearing *en banc* of the panel's recent decision in *Campbell v. Keagle Inc.*, 2022 WL 633305 (7th Cir. March 4, 2022) (attached as Exhibit A). The panel enforced a "*inordinately* one-sided" and "unconscionable"[1] arbitration agreement, which gave the defendant the unilateral ability to choose the arbitrator, arbitral rules, and location of the arbitration, and which stripped Plaintiff of her right to recover statutory attorneys' fees and imposed prohibitive costs. In upholding the agreement, the panel reversed the district court's finding that the agreement was unconscionable and unenforceable under Illinois state law; instead, the panel ordered that the district court was *required* to appoint a neutral arbitrator pursuant to 9 U.S.C. § 5 and excuse the defendant's bad faith in drafting an unlawful agreement. Ex. A at 4.

The panel's decision conflicts with this Court's precedent in *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 781 (7th Cir. 2014), which was cited by the district court and the parties, but which the panel opinion wholly ignores. The decision also raises questions of exceptional importance concerning the availability of traditional contract law defenses under the savings clause of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 and the interplay of Sections 2 and 5 of the

---

[1]     *See Campbell v. Keagle, Inc.*, No. 20-CV-2271, 2021 WL 6102930, at *6 (C.D. Ill. June 28, 2021) (emphasis in original).

1

FAA. *Jackson* held that "the FAA does not preempt state law, nor does it operate to permit the creation, from scratch, of an alternate arbitral mechanism" when the existing one is unconscionable, *see* 764 F.3d at 781. However, the panel here did exactly what the *Jackson* court prohibited – it ordered the district court to appoint an arbitrator under Section 5 despite finding that the arbitration agreement was permeated with unconscionability.

The panel relied on this Court's decision in *Green v. U.S. Cash Advance, LLC*, 724 F.3d 787 (7th Cir. 2013). *See* Ex. A at 4-5. But in *Green*, neither party alleged that the contract was unconscionable under state law, and indeed, the *Green* court noted that things might have been different if they had. *Green*, 724 F.3d at 791 (discussing Section 2 savings clause and noting that "neither side has asked for that relief or even contended that it would be possible under state law"). Furthermore, *Jackson*, decided a year after *Green*, <u>refused</u> to appoint an arbitrator under Section 5 where the arbitration agreement at issue was unconscionable and sought "to manipulate what purported to be a fair arbitration process." *Jackson*, 764 F.3d at 781.  The *Jackson* court noted that unlike in *Green*, when an arbitration agreement is "unconscionable and unlawful", "the court cannot save the arbitral process simply by substituting an arbitrator." *Id.* Although *Jackson* remains controlling precedent in this Circuit, the panel did not cite or analyze it.

This Court's full review of the panel's decision is essential because of the perverse incentives it creates for parties to draft egregiously unconscionable arbitration agreements. Under the panel's decision, a company may deliberately write multiple unconscionable terms into its contract, including reserving for itself the exclusive ability to select the arbitrator in a naked effort to gain advantage over its employees or consumers, safe in the knowledge that if anyone ever challenges these unconscionable provisions, the courts will simply trim them away and invoke 9 U.S.C. § 5 to appoint a neutral arbitrator. But not all litigants will know to challenge a biased arbitrator selection mechanism in court; many low-wage workers or unsophisticated consumers will be deterred from bringing a claim in the first instance or will be subjected to an unfair arbitral process that "would undermine, not advance, the federal policy favoring alternative dispute resolution." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 941 (4th Cir. 1999); *see also Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 661 (6th Cir. 2003) (unconscionable provisions in an arbitration agreement can "have the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights").

If there are no consequences to drafting agreements riddled with unconscionable terms, then under the panel's decision, defendants like Keagle Inc. will be incentivized to include such provisions and see what they can get away

3

with. After all, what is the worst that can happen? In those rare instances when a litigant like Campbell challenges the contract, the panel's decision would require the court to simply sever the unconscionable provisions and enforce whatever was left over -- no matter how sparse -- by appointing an arbitrator under 9 U.S.C. § 5.

Courts across the country have consistently held that where a party deliberately writes multiple unconscionable terms into its contract in an attempt to gain advantage, the court should not reward this behavior by simply trimming away those provisions and enforcing the balance or filling in the gaps. *See, e.g.*, *Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021); *Zaborowski v. MHN Gov't Servs., Inc.*, 601 F. App'x 461, 464 (9th Cir. 2014); *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013); *Nino v. Jewelry Exchange*, 609 F.3d 191 (3d Cir. 2010); *Kristian v. Comcast Corp.*, 446 F.3d 25, 62 (1st Cir. 2006); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 787-88 (9th Cir. 2002).

As Chief Justice Roberts noted when sitting on the D.C. Circuit:

If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts, the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties....Thus, the more the employer overreaches, the less likely a court will be able to sever the provisions and enforce the clause, a dynamic that creates incentives against the very overreaching Booker fears.

*Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 84–85 (D.C. Cir. 2005) (Roberts, J.).

Indeed, Illinois state law, which governs the inquiry here, dictates that "the fairness of the agreement as originally written is relevant to whether the trial court should modify the agreement or sever the unenforceable provisions." *Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1344 (1993); *see also First Peek Ultrasound L.L.C. v. Weideman*, 2018 WL 6438309 (Ill. App. Ct. 2018) ("The entire contract is written with the distinct purpose of permitting First Peek to bully untrained part-time at-will employees into believing that they cannot resign … As such, … to sever the[] [unconscionable terms] would be tantamount to rewriting the entire contract.").

The panel's departure from *Jackson* (as well as the numerous decisions of other courts cited above), necessitates *en banc* review to "secure and maintain the uniformity of" this Court's decisions and to address an issue of exceptional importance regarding the interplay between Section 2 and Section 5 of the FAA. *See* Fed. R. App. P. 35(a). If the panel's opinion stands, district courts will be "*require[d]* …to name an arbitrator" under Section 5 of the FAA, even where an agreement was drafted in bad faith and includes multiple unconscionable terms, and even where state law dictates that such an agreement should be stricken in its entirety. Such a holding undermines Section 2's savings clause – which expressly preserves state law unconscionability doctrine – and it incentivizes defendants to draft one-sided agreements, safe in the knowledge that, at worst, courts will excuse

their bad faith drafting, and still force those few litigants who challenge them to arbitrate their claims.

## BACKGROUND

Plaintiff-Appellee Brandi Campbell filed claims under the Fair Labor Standards Act ("FLSA") and Illinois state wage laws in the Central District of Illinois on September 29, 2020, on behalf of herself and other similarly situated exotic dancers at Defendants' club in Urbana, Illinois. *See* ECF No. 1, Complaint.

Defendant subsequently filed a Motion to Compel Arbitration based on Paragraph 8 of an "Entertainment Lease"[2] that Plaintiff signed, which stated:

> Any controversy, dispute or claim arising out of this lease or otherwise from me entertaining at the premises of this club shall be exclusively decided by binding arbitration under the Federal Arbitration Act. The owners of the Silver Bullet Bar reserve the right to choose the arbitrator and location of any such proceedings. I agree that all claims between me and the Silver Bullet Bar, its owners, or management will not be litigated individually and that I will not consolidate or file a class suit for any claim against the Silver Bullet Bar, its owners, or management. I will pay the cost of my arbitration and legal costs, regardless of the outcome of any such action.

---

[2]     Although Defendants characterize Plaintiff as "leasing" space at its establishment, numerous courts have repeatedly found exotic dancers to be employees of the clubs where they perform. *See, e.g.*, *McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 244 (4th Cir. 2016); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *Shaw v. Set Enterprises, Inc.*, 241 F. Supp. 3d 1318, 1323 (S.D. Fla. 2017); *Degidio v. Crazy Horse Saloon and Restaurant, Inc.*, 2015 WL 5834280, at *7-12 (D.S.C. Sept. 30, 2015); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 921 (S.D.N.Y. 2013); *Clincy v. Galardi South Enterprises, Inc.*, 808 F. Supp. 2d 1326, 1349 (N.D. Ga. 2011); *Thompson v. Linda And A, Inc.*, 779 F. Supp. 2d 139, 148, 151, 154 (D.D.C. 2011); ; *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1352 (M.D. Fla. 1997).

A25, ℙ 8.

Plaintiff opposed the Motion to Compel Arbitration on the ground that the contract included multiple unconscionable terms such as a limitation on her remedies under the wage laws, an unconscionable forum selection clause, cost-splitting, and most egregiously, an arbitrator selection mechanism that granted the defendant *exclusive* control over who would serve as arbitrator (and by extension, what rules would apply), with no limitations whatsoever. Indeed, the defendant strip club could have appointed its own manager to serve as the arbitrator over Ms. Campbell's case if it had wanted to. *See Chavarria*, 733 F.3d at 927 ("If state law could not require some level of fairness in an arbitration agreement, there would be nothing to stop an employer from imposing an arbitration clause that, for example, made its own president the arbitrator of all claims brought by its employees.").

The District Court agreed with Plaintiff that the arbitration clause was unconscionable and therefore unenforceable and denied the Motion to Compel Arbitration. *Campbell*, 2021 WL 6102930, at *6. The court found that the terms "strongly suggest that any arbitrator will be chosen in a manner to ensure partiality." *See id.* at *2 (internal quotations omitted). Further, the court noted that the terms were inconsistent with "statutory fee-shifting provisions." *See id.* *4. The court also acknowledged that "the arbitration clause is plainly one-sided insofar as Defendants have reserved the sole right to determine the location of arbitration

7

proceedings," *see id.* at *3, and that it "suggests a strong possibility that Defendants would ultimately dictate the rules for arbitration through their exclusive right to choose the arbitrator." *See id.* at *4. The district court declined Defendants' invitation to appoint an arbitrator pursuant to Section 5 of the FAA, finding that "the instant clause is more analogous to the unconscionable agreement in *Jackson* than to the enforceable agreement in *Green*", *see id.* at *4, and "an unconscionable provision is not equivalent to a lapse in the naming of an arbitrator." *Id.* at *5.

On appeal, the panel vacated the district court's decision in a brief, cursory opinion. The panel determined that, notwithstanding the district court's finding of unconscionability, "§ 5 permits (indeed *requires*) a judge to name an arbitrator, even if the only thing that survives a judge's encounter with the clause is the fact that the parties have agreed to arbitrate." Ex. A at 4-5 (emphasis added). In support of this assertion, the panel cited *Green*, 724 F.3d at 787, but it conspicuously failed to cite *Jackson*, 764 F.3d at 781. The panel's holding – that a court must appoint an arbitrator under Section 5, even when an agreement is unconscionable and unlawful – conflicts with *Jackson* and the Supreme Court's jurisprudence, holding that arbitration agreements *can* be stricken based on generally applicable state law contract defenses such as unconscionability under Section 2 of the FAA.

8

The panel remanded the case for the district court to name an arbitrator and enter an order compelling arbitration. Ex. A at 5.  For the reasons set forth herein, Plaintiff respectfully requests rehearing *en banc*.

## ARGUMENT

### 1. The Panel's Decision To Order Arbitration And Appoint An Arbitrator Under An Unconscionable Agreement Warrants *En Banc* Review

#### A. The Panel's Decision Conflicts With This Circuit's Precedent In *Jackson v. Payday Financial, LLC*

The panel's unannounced departure from this Court's decision in *Jackson* and misplaced reliance on *Green* – a decision that did not involve traditional state contract law defenses of unconscionability – creates a conflict within this Circuit's precedent concerning the propriety of utilizing 9 U.S.C. § 5 to appoint an arbitrator where the enforceability of the arbitration provision itself is in doubt.

In ordering the district court to appoint an arbitrator pursuant to Section 5, the panel cited only one decision from this Court; *Green* was a 2013 decision, which held that where the parties had agreed to arbitrate before "one arbitrator by and under the Code of Procedure of the National Arbitration Forum", but the NAF had since dissolved and no longer existed, it was appropriate to appoint an arbitrator pursuant to Section 5. 724 F.3d at 789. The *Green* Court found that the agreement called for use of the NAF's Code of Procedure (not for exclusive use of

the NAF itself to arbitrate the dispute) and so long as the Code was applied, the

arbitrator could come from anywhere. *Id.* at 789-90.

The *Green* court went on to explain that Section 5's language means that

"arbitration clauses remain enforceable if for 'any' reason there is 'a lapse in the

naming of an arbitrator.'" *Id.* at 791.[3] Significantly, *Green* did not address

traditional contract law defenses to enforcement preserved under Section 2 of the

FAA. *Green* expressly acknowledged the availability of such defenses but noted

that "neither side . . . asked for that relief or even contended that it would be

possible under state law." *Id.* at 792.

A year later, this Court had occasion to consider the interplay of Section 2's

savings clause and Section 5 of the FAA in *Jackson*, 764 F.3d 765 (7th Cir. 2014)

– a decision conspicuously not cited by the panel opinion in this case. *Jackson*

involved an unconscionable agreement that stated arbitration would be "conducted

by the Cheyenne River Sioux Tribal Nation by an authorized representative in

accordance with its consumer dispute rules", *see id.* at 773, n. 18, a set of rules that

did not exist. The *Jackson* court found the agreement unconscionable and declined

---

[3]     This portion of the opinion in *Green* is arguably dicta, as it was not necessary to the Court's holding in *Green* that the agreement was enforceable as written. *See id.* at 790 ("[A]n agreement to conduct arbitration under the Forum's Code, with the Forum itself on the sidelines, is valid."). But in any case, even if the balance of the opinion in *Green* were considered part of its holding, the decision still does not control here because there was no argument in *Green* that the agreement was unlawful under Section 2's savings clause.

to simply appoint an arbitrator from an established arbitral body like the American

Arbitration Association under Section 5. *Id.* at 779-81. In so holding, *Jackson*

distinguished *Green*:

> In *Green,* we noted that, if the particular arbitration clause before us had
> been shorn of all detail … the mere existence of the arbitration clause would
> have made it clear that the parties still would have preferred to submit their
> dispute to arbitration. ***Although such mutuality of intent might have been
> apparent in the contractual relationship in Green, it is not at all apparent
> in the situation before us today.***

*Id.* at 780-81 (emphasis added). This court noted that the issue went beyond 'the

disability of a particular arbitrator" to serve, or even "the likelihood of a biased

arbitrator." *Id.* at 780. Of importance to the *Jackson* Court was the bad faith of the

defendant who sought to "manipulate" the arbitral process for its benefit, and the

unconscionability of the resulting agreement. *Id.* at 781. Under such circumstances,

the Court declined to utilize Section 5 to salvage an agreement that was otherwise

unconscionable and unenforceable under Section 2.[4]

  As in *Jackson*, here, the Court cannot say that the parties "would have

preferred to submit their dispute to arbitration" any more than they can say that a

---

[4]    Other courts have reached the same conclusion. *See, e.g.*, *Newton v.
American Debt Services, Inc.*, 2012 WL 3155719 (N.D. Cal. Aug. 2, 2012)
(holding that Section 5 is meant to supply an arbitrator where there is no
mechanism for doing so or where there is a "mechanical breakdown", but it is not
meant to supply an arbitrator where the mechanism provided by the contract has
been deemed unconscionable by the court).

reasonable person would prefer the numerous other unconscionable terms in the agreement, designed to systematically advantage Defendants over Campbell. *Id.* at 781. Indeed, under Illinois law, "[a]n unconscionable bargain is one which *no reasonable person would make* and which no honest person would accept." *Martinell v. Navistar Int'l Corp.*, 2012 WL 2503964, at *4 (N.D. Ill. June 28, 2012) (quoting *Zubi v. Acceptance Indem. Ins. Co.*, 323 Ill.App.3d 28, 37 (2001)) (emphasis added).[5] The district court correctly recognized that both *Green* and *Jackson* make a "distinction between § 2 and § 5 of the FAA" such that "an unconscionable provision [under Section 2] is not equivalent to a lapse in the naming of an arbitrator" under Section 5. *Campbell*, 2021 WL 6102930 at *5.

*Jackson* remains controlling precedent in this Circuit. The panel's failure to even account for *Jackson*, despite the district court doing so below, was a grave error. Moreover, the panel's misplaced reliance on *Green*, a decision that did not

---

[5]    The panel opinion notes that "arbitration is not itself unconscionable", and if, after severing the agreement's unconscionable terms, a seed of mutual intent to arbitrate remains, the panel held that a court is "require[d]…to name an arbitrator." Ex. A at 2, 4. But where, as here, an arbitration provision is *permeated* with unconscionability, it makes little sense to infer that enforcing the arbitration provision fulfills the parties' mutual intent because the very "term 'unconscionable' encompasses the _absence of meaningful choice_ by one of the parties as well as contract terms which are unreasonably favorable to the other party." *Id.* (emphasis added). The panel's opinion, taken to its logical conclusion, means that a court could virtually never strike an arbitration provision as unconscionable, because after trimming away all the illegality, it would be *required* to enforce whatever seed of intent to arbitrate remains. This result is not consistent with *Jackson*.

involve charges of unconscionability, creates a sharp conflict within this Circuit's

precedent concerning how and when to invoke Section 5 to appoint an arbitrator.

The case warrants rehearing *en banc* to "secure and maintain uniformity of" this

Circuit's decisions and avoid widespread confusion.  *See* Fed. R. App. P. 35(a)(1).

**B. The Panel's Decision Presents Questions of Exceptional Importance Regarding The Relationship Between Section 2 and Section 5 of the FAA**

Section 2 of the FAA (the "saving clause") preserves as a basis for

invalidating an arbitration agreement on "such grounds as exist at law or in equity

for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). While Section

2 serves to place arbitration agreements on "equal footing" with other contracts,

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), it does not

eliminate the backdrop of state law governing all contracts. The Supreme Court's

precedents consistently recognize that the FAA's saving clause maintains

"generally applicable contract defenses, such as fraud, duress, or

unconscionability." *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622

(2018) (*quoting Concepcion*, 563 U.S. at 339). This preservation of state law

unconscionability doctrine is consistent with the proper role afforded to

background state contract law in interpreting and enforcing arbitration agreements.

*See, e.g., Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,

489 U.S. 468, 474 (1989) ("[T]he interpretation of private contracts is ordinarily a

question of state law, which this Court does not sit to review."). Indeed, as this Court has itself recognized, traditional contract law defenses are necessary to maintain the integrity of the FAA: "It hardly frustrates FAA provisions to void an arbitration clause on the ground that it contemplates a proceeding for which the entity responsible for conducting the proceeding has no rules, guidelines, or guarantees of fairness." *Jackson,* 764 F.3d at 779.

Under the panel's decision here, it is difficult to imagine when it would *ever* be appropriate to strike an arbitration agreement as unconscionable under state law rather than simply severing those terms and enforcing whatever is left over by appointing an arbitrator under Section 5. Indeed, it cannot be the case that the FAA "*requires* a judge to name an arbitrator" *see* Ex. A at 4-5 (emphasis added), even if the court finds the agreement permeated with unconscionability, as the district court did here. A17. The panel's decision sweeps broadly, and in doing so, it effectively eliminates the ability of state law unconscionability doctrine to *ever* invalidate an arbitration agreement – even one that includes multiple unconscionable terms and gives one party the exclusive right to choose the arbitrator, forum, and arbitration rules. In short, the panel's decision requires courts to give defendants who draft an unconscionable arbitration agreement in bad faith, like Keagle Inc., a free pass.

14

The panel's decision also conflicts with the decisions of other Courts of
Appeals, which have held that where "[t]he only conceivable purpose of the
arbitration agreement's one-sided provisions is to stack the deck in [defendant's]
favor" this fact "mak[es] severance of the unconscionable terms inappropriate."
*Nino*, 609 F.3d at 207; *see also Ferguson*, 298 F.3d at 787–88 (9th Cir. 2002)
("[M]ultiple defects indicate a systematic effort to impose arbitration on an
employee not simply as an alternative to litigation, but as an inferior forum that
works to the employer's advantage."); *Booker*, 413 F.3d at 85; *Lim*, 8 F.4th at
1005; *Kristian*, 446 F.3d at 62.

Illinois courts have likewise held that "the fairness of the Agreement as
originally written is also relevant to whether the trial court should modify the
Agreement or sever the unenforceable provisions", *Abbott-Interfast Corp.*, 619
N.E.2d at 1344; *Potiyevskiy v. TM Transp., Inc.*, 2013 WL 6199949 (Ill. App. Ct.
Nov. 25, 2013) (declining to sever three unconscionable terms despite presence of
a severability clause); *First Peek*, 2018 WL 6438309. Nothing in the FAA or this
Court's precedent requires courts to ignore state contract law in deciding whether
to strike an arbitraation agreement rather than sever the offending terms. By
holding that the district court was effectively *required* to sever the offending terms
and appoint an arbitrator under Section 5, the panel's opinion usurps the role of

15

state law unconscionability and severability analysis. As such, the opinion creates

needless conflict between Section 2's savings clause and Section 5 of the FAA.

## CONCLUSION

The Court should grant this Petition and order rehearing *en banc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant Fed. R. App. P. 35(b)(2) and 40(b), the

attached petition for rehearing en banc is proportionately spaced, has a typeface

font of 14 points or more and contains 3,895 words (petitions and answers must not

exceed 3,900 words).


Dated:  March 18, 2022                    */s/ Adelaide Pagano*
                                          Adelaide Pagano, Esq.
                                          LICHTEN & LISS-RIORDAN, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022, I caused the foregoing document to be filed with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, which will provide notification of this filing to all counsel of record.

Dated: March 18, 2022                    */s/ Adelaide Pagano*
                                          Adelaide Pagano, Esq.

# EXHIBIT A

In the

# United States Court of Appeals

## For the Seventh Circuit

————————————

No. 21-2256

BRANDI CAMPBELL,

*Plaintiff-Appellee,*

*v.*

KEAGLE INC. and EDWARD SALFELDER, JR.,

*Defendants-Appellants.*

————————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 20-CV-2271 — **Colin S. Bruce**, *Judge.*

————————————

ARGUED JANUARY 7, 2022 — DECIDED MARCH 4, 2022

————————————

Before EASTERBROOK, ST. EVE, and KIRSCH, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. When she started to work at
the Silver Bullet Bar in Urbana, Illinois, Brandi Campbell
signed a contract with Keagle Inc., the bar's owner. Section 8
provides that "[a]ny controversy, dispute or claim arising out
of" her work will be arbitrated. Such a dispute has arisen, but
Campbell filed a suit rather than a demand for arbitration.
The district judge denied Keagle's motion to refer the matter

to arbitration, 2021 U.S. Dist. Lᴇxɪs 245472 (C.D. Ill. June 28, 2021), and Keagle appealed under 9 U.S.C. §16(a).

The district judge deemed several parts of the arbitration clause unenforceable because they are unconscionable as a matter of Illinois law. Unconscionability is a defense to arbitration, if it is among "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. In other words, arbitration is permissible to the extent, and only to the extent, that state law would enforce other equivalent agreements. The district judge thought that Illinois would not enforce this agreement because some provisions in the arbitration clause are too favorable to Keagle.

Section 8 of the contract provides that any dispute

> shall be exclusively decided by binding arbitration under the Federal Arbitration Act. The owners of the Silver Bullet Bar reserve the right to choose the arbitrator and location of any such proceedings. I agree that all claims between me and the Silver Bullet Bar, its owners, or management will not be litigated individually and that I will not consolidate or file a class suit for any claim against the Silver Bullet Bar, its owners, or management. I will pay the cost of my arbitration and legal costs, regardless of the outcome of any such action.

The district judge saw multiple lopsided aspects of this clause. Keagle gets to choose the arbitrator and the location of the arbitration; Campbell must bear all costs even if Keagle loses on the merits and some state or federal statute requires losers to foot the bill. The district judge added that the agreement's silence about arbitral procedures might enable Keagle's chosen arbitrator to use biased modes of decision (though 9 U.S.C. §10 says otherwise). The judge recognized that arbitration is not itself unconscionable, but he refused to

order arbitration once details such as selection and location had been stripped from the clause.

The district court relied on *Razor v. Hyundai Motor America*, 222 Ill. 2d 75 (2006), which is among many decisions holding that a one-sided contract is unconscionable. The judge did not find that the contract between Campbell and Keagle is one-sided; instead he assumed that a rule applicable to a contract as a whole must be true about each aspect of each clause in it. That's far from clear to us. Consider a contract with four clauses. Clause 1 requires Seller to deliver 100 merchantable widgets to Buyer. Clause 2 requires Buyer to pay $1 million to Seller. Clause 3 provides that any dispute about the widgets' merchantability will be resolved by an expert, chosen by Buyer from a trade association's list. Clause 4 provides that Buyer has only 30 days to contest the widgets' merchantability, even though state law otherwise allows two years. Each of these four clauses is one-sided, if considered in isolation; Clauses 1 and 3 favor Buyer, while Clauses 2 and 4 favor Seller. Yet no one would contend that the contract as a whole is unconscionable (if widgets are worth roughly $10,000 apiece) or that any of the clauses is unenforceable.

Keagle does not pursue this line of reasoning, however. It accepts the district court's holding that provisions for selecting an arbitrator, specifying venue, and paying costs are unenforceable. It maintains that its only goal is to arbitrate rather than litigate—that the details don't matter, so the judge may fill in the blanks. This is its sole argument on appeal.

Section 4 of the Federal Arbitration Act, 9 U.S.C. §4, fills in one blank. It provides that, in the absence of a contrary agreement, the arbitration takes place in the same judicial district as the litigation—here, the Central District of Illinois. And the

district judge himself stressed that "who pays" may be determined by some other state or federal statute, such as the Fair Labor Standards Act, on which Campbell's suit rests. See 29 U.S.C. §216(b) (prevailing plaintiffs recover costs and legal fees). That leaves only the choice of arbitrator—who, once selected, can prescribe the procedures if they are not otherwise determined. For example, if the arbitrator were chosen from a list maintained by the American Arbitration Association, the AAA's procedures would be used automatically.

According to §5, 9 U.S.C. §5, "if for any … reason there shall be a lapse in the naming of an arbitrator … then upon the application of either party to the controversy the court shall designate and appoint an arbitrator". The use of "shall" means that this is a judicial duty; a court cannot scuttle arbitration by declining to name an arbitrator. See, e.g., *Green v. U.S. Cash Advance, LLC,* 724 F.3d 787 (7th Cir. 2013).

If the parties have made clear that they want to arbitrate only under prescribed conditions, which cannot be fulfilled, then litigation is the only remaining option. But this contract does not imply that Campbell agreed to arbitration only because Keagle would choose the arbitrator. Keagle has that option—or had it, until the district judge said no—but people may waive contractual entitlements. Keagle has done so by accepting this aspect of the district court's decision. As in *Green*, the mutual assent to arbitration remains, and a federal judge should implement the parties' decision whenever possible. That can be done by naming an arbitrator under §5, and everything else will take its own course.

Campbell protests that this uses §5 to rewrite an arbitration clause. It would be better to say that §5 permits (indeed requires) a judge to name an arbitrator, even if the only thing

that survives a judge's encounter with the clause is the fact that the parties have agreed to arbitrate. That's what happened in *Green* itself, and in the cases on which *Green* relied.

One final argument requires only brief comment. Keagle contends that it does not affect enough interstate commerce to bring it within the scope of the Fair Labor Standards Act. Maybe, maybe not. That will be for the arbitrator (and if necessary a federal judge) to determine. Either way, the amount of commerce concerns the coverage of the statute; Keagle is wrong to think that it is an element of subject-matter jurisdiction. Campbell's claim arises under federal law, so 28 U.S.C. §1331 supplies jurisdiction. If she fails to prove all elements of her claim, including the commerce element, then she loses on the merits, not for want of jurisdiction. See, e.g., *Bell v. Hood*, 327 U.S. 678 (1946); *United States v. Martin*, 147 F.3d 529, 531–33 (7th Cir. 1998).

The district court's decision is vacated, and the case is remanded with instructions to name an arbitrator, refer the dispute to arbitration, and stay further judicial proceedings.